**LO & LO LLP**
JONATHAN J. LO (SBN 305306)
jonathan@lolollp.com
KELVIN J. LO (SBN 314611)
kelvin@lolollp.com
BRENDAN T. MOLLOY (346921)
brendan@lolollp.com
506 North Garfield Avenue, Suite 280
Alhambra, California 91801
Telephone: 626.289.8838
Facsimile: 626.380.3333

Attorneys for Debtor/Defendant
YAO LIN

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>YAO LIN,<br><br>    Debtor.<br>─────────────────<br><br>BEIJING SOUFUN SCIENCE AND TECHNOLOGY DEVELOPMENT CO., LTD.,<br><br>    Plaintiff,<br><br>  v.<br><br>YAO LIN,<br><br>    Defendant. | Case No. 1:23−bk−10733−MB<br><br>Adv. No. 1:23-ap-01036-MB<br><br>Chapter 7<br><br>Hon. Martin R. Barash<br><br>**DEFENDANT YAO LIN'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF**<br><br>Date:<br>Time:<br>Place: 21041 Burbank Blvd., Crtrm 303<br>    Woodland Hills, CA 91367<br>Judge: Hon. Martin R. Barash |



DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY
ADJUDICATION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on _____ at _____ a.m./p.m. or as soon thereafter as the matter may be heard in Courtroom 303 of the Woodland Hills Courthouse, located at 21041 Burbank Blvd., Woodland Hills, CA 91367, defendant YAO LIN ("LIN") will and hereby does move for summary judgment pursuant to Federal Rule of Civil Procedure 56, made applicable by Federal Rule of Bankruptcy Procedure 7056, local bankruptcy rule 7056-1, and 9013-1 through 9014-4, on the basis that there is no genuine dispute as to any material fact and that LIN is entitled to summary judgment as a matter of law.

LIN moves for summary judgment on the adversary complaint ("AC") filed by plaintiff BEIJING SOUFUN SCIENCE AND TECHNOLOGY DEVELOPMENT CO., LTD. ("BSF") on the grounds that BSF fails to state any causes of action against LIN because BSF has no evidence to prove the elements of non-dischargeability against LIN.

In the alternative, LIN moves for summary adjudication on the following issues and grounds:

(1) That the judgment debt which BSF is seeking to have declared non-dischargeable is dischargeable because there is no genuine dispute of material fact that at the time that LIN entered into the Guarantee Contract LIN did not knowingly make any false representations, engage in actual fraud, or enter the contract under false pretenses.

(2) BSF's second of action for non-dischargeability under 523(a)(6), fails to state any cause of action against LIN because BSF has no evidence to show that LIN acted willfully and maliciously to injure plaintiff and/or the property of plaintiff; and

(3) BSF's third, fourth, and fifth causes of action fail to state any cause of action against LIN because BSF's critical allegation, that $800,000.00 was transferred from East West Bank Accounts by LIN, has been proven demonstrably false, and BSF has no evidence to show that any such transfer was made by LIN.

LIN's motion is based on this notice of motion; the attached memorandum of points and authorities; the concurrently filed declarations; the concurrently filed separate statement of undisputed material facts; the proposed judgment; the complete files and records of this action;



1   and on such other oral and/or documentary evidence as may be presented at the hearing on LIN's

2   motion.

3

4   Dated: May 15, 2025                                    LO & LO LLP

5

6                                                    By: _____

7                                                         Kelvin J. Lo
                                                          Jonathan J. Lo
8                                                         Brendan T. Molloy
                                                          Attorneys for Defendant
9                                                         YAO LIN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY
ADJUDICATION

## **TABLE OF CONTENTS**

I.    INTRODUCTION.............................................................................................................................7

   A.    Relief Sought.........................................................................................................................7

   B.    Statement of Uncontroverted Facts........................................................................................8

II.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION ...................14

   A.    Standard to Grant Summary Judgment ..................................................................................14

   B.    Burden of Production and Persuasion ....................................................................................15

III.    LEGAL ARGUMENT ......................................................................................................................16

   A.    The Debt Which BSF Seeks to Declare Non-Dischargeable Is a Judgment Based on a Dischargeable Contractual Personal Guarantee ...............................................................................................................16

   B.    Plaintiff's First Cause of Action for Nondischargeability of Debts Under 523(a)(2)(A) Based on a Theory of Fraudulent Transfer Fails ...................................................................................................................18

      1.    LIN Had No Actual Intent To Hinder or Delay ........................................................18

   C.    BSF's Second Cause of Action for Nondischargeability of Debts Under 523(a)(6) Fails to Meet the Willful and Malicious Prongs.................................................................................................................21

      1.    Willful Intent ...............................................................................................21

      2.    Malicious Injury...........................................................................................22

   D.    BSF's Third, Fourth, and Fifth Causes of Action for Nondischargeability of Debts Under 727(a)(2), 727(a)(4)(A), and 727(a)(5)...........................................................................................................23

      1.    BSF's Third Cause of Action for Nondischargeability of Debts Under 727(a)(2) Fails Because It Is Based on Transfers Which Did Not Occur ....................................................................23

      2.    Plaintiff's Fourth Cause of Action for Nondischargeability of Debts Under 727(a)(4) Fails Because There Is No Genuine Dispute of Material Fact as to the Issue of Whether Made a False Oath or Withheld Info ......................24

      3.    BSF's Fifth Cause of Action for Nondischargeability of Debts Under 727(a)(4) Fails Because No Genuine Dispute of Material Fact Exists As To Defendant Lin's Satisfactory Explanation for All Transfers Relating to the Estate ......................25



DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION

1

## TABLE OF AUTHORITIES

2    11 U.S.C. § 523(a)(2)(A) ............................................................................................ 16

3    11 U.S.C. § 523(a)(6) .............................................................................................. 19

4    11 U.S.C. Section 727(a)(2) ..................................................................................... 22

5    11 U.S.C. Section 727(a)(4)(A) ................................................................................ 23

6    11 U.S.C. Section 727(a)(5) ..................................................................................... 23

7    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ...................................... 14

8    F. Standards Governing Summary Judgment, Rutter Group Prac. Guide Fed. Civ. Pro. Before

9      Trial Ch. 14-F ........................................................................................................ 15

10   Fed. R. Bankr. P. 7056 ............................................................................................. 14

11   *Field v. Mans*, 516 U.S. 59, 73-76 (1995) ............................................................... 17

12   Grogan v. Garner, 498 U.S. 279 (1991) .................................................................. 21

13   *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 355 (2016). .................................. 17

14   *In re Dakota*, 284 B.R. at 721 ................................................................................. 17

15   *In re Edie* (BC D UT 2004) 314 BR 6, 17 ................................................................ 20

16   *In re Gertsch*, 237 B.R. 160 (1999)......................................................................... 17

17   *In re Philopulos* (BC ND IL 2004) 313 BR 271, 282 ............................................... 17

18   *In re Risoi*, 978 F.2d 1151 (9th Cir. 1992)............................................................... 21

19   *In re Steger* (8th Cir. BAP2012) 472 BR 533, 537 .................................................. 20

20   *In re Su*, 290 F.3d 1140, 1143 (9th Cir. 2002) ........................................................ 20

21   *Jendusa-Nicolai v. Larsen* (7th Cir. 2012) 677 F3d 320, 323-324 ............................ 20

22   *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)....................................................... 19

23   *Nunez v. Superior Oil Co.* 572 F2d 1119, 1126 (5th Cir. 1978) ................................ 15

24   *Provenz v. Miller*, 102 F.3d 1478 (1996) ................................................................ 18

25   Rule 56(a) of the Federal Rules of Civil Procedure .................................................. 14

26   *See* 10A Charles Alan Wright, Arthur R. Millerand Mary Kay Kane, Federal Practice and

27      Procedure § 2727 (3ded.1998) ............................................................................... 15

28



*See High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990) ...................................................................................................................................... 16

*See In re Qari* (BCND CA 2006) 357 BR 793, 798 .................................................................... 19

DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY
ADJUDICATION



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

**I. INTRODUCTION**

**A. Relief Sought**

Defendant YAO LIN ("LIN" or "Defendant") seeks summary judgment as to plaintiff BEIJING SOUFUN SCIENCE AND TECHNOLOGY DEVELOPMENT CO., LTD ("BSF" or "Plaintiff")'s entire adversary complaint ("AC").

In the alternative, LIN seeks summary adjudication as to BSF's second, third, fourth, and fifth causes of action. As discussed below:

- LIN's purported debt to BSF is based on the September 16, 2015 Guarantee Contract under which LIN, Longhe, and Xuyin guaranteed the obligations borne by Allscore and Hailian under the Termination Agreement. However, in entering into the Guarantee Contract, LIN made no representations which he knew were false, there existed no intent to deceive BSF, BSF did not rely on any false representation, and BSF suffered no damage as a result of any alleged false representation. Therefore, BSF's nondischargeability claim under Section 523(a)(2)(A) must fail.

- The transfers of real property to LIN's wife Jia Chen were exchanged for better than equivalent value especially since LIN kept Allscore which was valued at approximately $120 million, and Jia Chen paid LIN approximately $2.74 million. LIN's net worth increased as a result of the transfers, and the transfers were in good faith pursuant to the divorce settlement triggered by Jia Chen's discovery of LIN's infidelity.

- BSF cannot prove both the "willful" and "malicious" prongs to hold the debt nondischargeable. The evidence shows that there was no subjective motive to inflict injury as the transfers were made in good faith under a legitimate divorce settlement, and LIN is only one of four debtors (Allscore, Hailian, Longhe, and LIN) on the debt owed to BSF. There was no wrongful act by LIN, the transfers were done with just cause, and BSF has not shown that it has been harmed since it may still pursue the three other debtors.

- Lastly, a denial of discharge under 11 U.S.C. Section 523(a)(6) and 11 U.S.C. Section 727 is not warranted because LIN had no intent to hinder, delay, or defraud creditors, no



false oaths were made, and there is a satisfactory explanation for the transfers of assets. BSF's allegation in its AC that LIN allegedly hid and transferred $800,000 from East West Bank accounts is false, as has been confirmed by the Chapter 7 trustee, and this allegation therefore cannot be proven by BSF.

LIN's motion is based upon the following uncontroverted facts:

**B. Statement of Uncontroverted Facts**

- ***March 2014- LIN'S first separation from Jia Chen:*** In or around March 14, 2014, Jia Chen, LIN's marital partner, found out that LIN was having an affair, and the two signed a divorce and separation agreement. Under that agreement, the couple's joint accounts in the United States were assigned to Jia Chen. Additionally, LIN agreed to pay 5 million Chinese RMB to Jia Chen in alimony/child support. In return LIN maintained sole ownership of his companies (worth approximately $120 million USD at that time). Additionally LIN retained ownership of his real property in Zhenjiang, China while Jia Chen retained ownership of her real property in Beijing, China. Finally, each party was responsible for his or her own debts.[1]

- ***August 2014- LIN and Jia Chen Reunite and Purchase Property:*** In or about August of 2014, Jia Chen and LIN reunited, with Jia Chen agreeing to give LIN another chance. They kept their divorce agreement in place as Jia Chen had not yet come to fully trust her husband. On July 13, 2015, LIN and Jia Chen purchased 27487 Latigo Bay View Drive in Malibu for $4.75 million USD.[2]

- ***September 2015-BSF enters into Termination Agreement with Corporate Entities:*** In September 16, 2015 BSF entered into an Agreement on Settlement of Outstanding Amount and the Termination of Nominee Holding the Final Award (the "Termination Agreement") with Allscore Payment Services Co., Ltd. ("Allscore"); Beijing Zhonghan Hailian Assets Management Co., Ltd. ("Hailian"); and Nanning Xuyin Business Co., Ltd. ("Xuyin"). Under the Termination Agreement, Allscore and Hailian are jointly and severally liable for

---

[1] See LIN's Separate Statement of Uncontroverted Fact No. 1 and supporting evidence, Exhibit 4.

[2] See LIN's Separate Statement of Uncontroverted Fact Nos. 2 and 3 and supporting evidence, Exhibits 5 and 6.

8



payment of an outstanding principal amount and liquidated damages amount owed to BSF in connection with a prior 2014 contractual agreement.[3]

- ***September 2015 - BSF, LIN, Beijing Longhe Trading Co. Ltd. ("Longhe") and Xuyin enter into the Guarantee Contract:*** Additionally, on September 16, 2015, BSF entered into a Guarantee Contract (the "Guarantee Contract") with LIN, Beijing Longhe Trading Co. Ltd. ("Longhe") and Xuyin.  Under the Guarantee Contract, Xuyin, Lin and Longhe are jointly and severally liable for all obligations borne by Allscore and Hailian under the Termination Agreement. However, in entering into the Guarantee Contract, LIN and the other guarantors made no representations which he knew were false, and he had no intent to deceive BSF.  LIN believed at the time that he and the companies were solvent and their holdings valuable enough to guarantee the Termination Agreement.  For example, as part of the understanding between the parties at the time the Guarantee Contract was entered, LIN who controlled Hailian, had agreed to sell Hailian's assets which LIN reasonably believed were valued at $45 million USD if Allscore and Hailian did not perform under the Termination Agreement.[4]

- ***September 2017- LIN and Jia Chen purchase the Broad Beach Property:***  On September 29, 2017, LIN and Jia Chen purchased 31663 Broad Beach Road, Malibu with $2.82 million USD, which included a $1.5 million USD loan from East West Bank under both names.[5]

- ***January 2018- BSF Submits Claim for Arbitration:*** After Allscore failed to make payments in accordance with the Termination Agreement—and Mr. Lin, Hailian, and Longhe failed to satisfy those payments in accordance with their guarantor obligations under the Termination Agreement and Guarantee Contract—BSF submitted a breach of contract claim for

---

[3] See LIN's Separate Statement of Uncontroverted Fact Nos. 4 and 5 and supporting evidence, Exhibit 31 (Plaintiff's complaint ¶ 9, pg. 1).

[4] See LIN's Separate Statement of Uncontroverted Fact Nos. 6 and 7 and supporting evidence, Exhibits 7 and 31 (Plaintiff's complaint ¶ 10, pg. 2).

[5] See LIN's Separate Statement of Uncontroverted Fact No. 8 and supporting evidence, Exhibit 8.

DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION

arbitration before the China International Economic and Trade Arbitration Commission ("CIETAC") on or around January 23, 2018.[6]

• ***January 2018 – Jia Chen discovers LIN's Affair has Continued:*** In January of 2018, Jia Chen discovered that LIN had continued his affair after seeing messages on LIN's phone corresponding with his mistress.[7]

• ***January 2018 – Jia Chen and LIN Separate for the Second Time:*** After discovering LIN's continued affair, Jia Chen immediately had a new divorce agreement drafted and the parties signed the agreement. The new divorce agreement provided that Jia Chen would have the rights to the properties located in America, the Latigo Property, the Broad Beach Property, and the couple's American-based joint bank accounts and finance management accounts. In exchange, Jia Chen agreed to be solely responsible for the loans on the Latigo Property and Broad Beach Property and, although not concurrent with the divorce, paid LIN approximately $2.74 million (consisting of a $2.34 million wire to help LIN keep his companies afloat and approximately $400,000 in payments for LIN's legal fees). In addition, LIN kept his Chinese businesses and Jia Chen gave up any community property interest in those companies. Finally, LIN agreed to pay $100,000 per month to Jia Chen and his children, whom would remain in the US with their mother. At the time of the new divorce agreement was signed the Latigo house was valued at about $2.35 million USD (value of $4.75 million minus $2.4 million loan), and the Broad Beach Property was valued at about $1.32 million USD (value of $2.82 million minus $1.5 million loan). Therefore, the total value of the properties transferred was $3.65 million USD. At the time that LIN and Jia Chen entered into the Agreement, each felt they had received a fair value, and LIN's net worth increased by removing the properties as liabilities.[8]

---

[6] See LIN's Separate Statement of Uncontroverted Fact No. 9 and supporting evidence, Exhibit 31 (Plaintiff's complaint ¶11, pg. 2).

[7] See LIN's Separate Statement of Uncontroverted Fact No. 10 and supporting evidence, Exhibit 9.

[8] See LIN's Separate Statement of Uncontroverted Fact Nos. 11 and 12; and supporting evidence, Exhibit 10.



- ***November of 2018 – The Latigo Property is Destroyed in the Woosley Fire:*** In November of 2018, the Latigo Property was destroyed in the Woolsey Fire.  At the time the property had no insurance coverage. In November and December of 2018, Jia Chen wrote applications for disaster relief funds to FEMA and the Malibu Emergency Relief Fund.  In both application letters, Jia wrote that she and LIN were separated and in divorce procedure.[9]

- ***January 2019 – LIN Notarizes the Transfer of the Latigo Property and Broad Beach Property to Jia Chen:*** On January 7, 2019, LIN went to the US embassy in Beijing to notarize the transfer of the Latigo Property and the Broad Beach Property to Jia Chen.  At the time, LIN notarized the transfers to Jia Chen, the Latigo Property was only a burnt and empty plot of land, that still had a $2.2 million USD loan on it. Thus, at that time the net value was about $0 dollars.   It was foreclosed in November 2023 by the bank and sold in August 2024 with the price of $2.25 million.[10]

- ***March 2019- Jia Chen Records the Grant Deeds:*** On March 18, 2019, grant deeds for the Latigo Property and the Broad Beach Property are recorded reflecting change in title to Jia Chen as her sole and separate properties.  Jia Chen has paid the loans of two properties by herself since January 2018.[11]

- ***May 2019 – A Memorandum of Understanding Between Wirecard and Allscore Confirms the Company is Valued at Approximately 800 million RMB***: A Memorandum of understanding with Wirecard confirmed that LIN's company, Allscore, was worth 800 million Chinese RMB as of May of 2019.[12]

---

[9] See LIN's Separate Statement of Uncontroverted Fact Nos. 14 and 15 and supporting evidence, Exhibits 11, 12, and 13.

[10] See LIN's Separate Statement of Uncontroverted Fact Nos. 16, 17 and supporting evidence, Exhibits 14 and 15.

[11] See LIN's Separate Statement of Uncontroverted Fact Nos. 18 and 19 and supporting evidence, Exhibits 16 and 17.

[12] See LIN's Separate Statement of Uncontroverted Fact No. 20 and supporting evidence, Exhibit 18.

11



- ***September 2019 – Jia Chen Discovers Additional Evidence of LIN's Affair and finalizes the Divorce***: In September of 2019, after a year of separation, Jia Chen found out LIN had wired money to his mistress and so Jia Chen contacted a lawyer to finalize their divorce. On September 12, 2019, Jia Chen and LIN registered their divorce in China. The divorce registration merely confirmed the terms of their earlier separation agreements.[13]

- ***September 2019 – Final Arbitration Award is Issued in Favor of BSF and Against LIN:*** On September 6, 2019, the arbitration tribunal issued a final award ("Final Award") in favor of BSF and against LIN.[14]

- ***November 2019 – Wirecard signs an Agreement to buy JoyDragon and Aiwu valuing Allscore at $120 million USD:*** On November 5, 2019, Wirecard signed an agreement to buy Joydragon and Aiwu for a total of €78,695,023.  LIN owned 100% of Joydragon, which owns 69% of Apple Consulting.  Apple Consulting was the holding company of Allscore and owned 98.24% shares. The agreement recognized that the total value of Allscore was EUR 78,695,023 ($120 million USD at that time).[15]

- ***December 2019 – Jia Chen and LIN reunite once more but keep the terms of their Separation Agreements in Place:*** On December 24, 2019, Jia Chen was convinced to give LIN another chance. However, given their past history Jia Chen demanded a prenuptial agreement keeping their asset arrangements from their previous agreements and maintaining their financial lives as sperate. As part of the prenuptial agreement LIN agreed to continue paying $150,000.000 a month to Jia Chen and his children. On December 30, 2019, deciding to give their marriage another chance for the sake of their children, LIN and Jia Chen remarried. In

---

[13] See LIN's Separate Statement of Uncontroverted Fact Nos. 21 and 22 and supporting evidence, Exhibits 19, 20, 21, and 22.

[14] See LIN's Separate Statement of Uncontroverted Fact No. 13 and supporting evidence, Exhibit 31 (Plaintiff's Complaint ¶ 12, pg. 2).

[15] See LIN's Separate Statement of Uncontroverted Fact No. 23 and supporting evidence, Exhibits 23 and 24.

January of 2020, LIN moved to the United States and became a United States permanent resident in order to reunite with his family.[16]

- ***June 2020- Wirecard becomes embroiled in scandal and goes Bankrupt Never Fulfilling its Agreements with Allscore:*** In June of 2020, Wirecard was embroiled in a scandal and went bankrupt never fulfilling its contractual agreements with Allscore. As a result, Allscore's business was suspended by the People's Bank of China and Allscore lost its income.[17]

- ***March 2021 – Jia Chen pays off the $1.5 million dollar mortgage on the Broad Beach Property:*** In March of 2021, the $1.5-million-dollar mortgage of the Broad Beach Property, which was still under both LIN and Jia Chen's name, was paid off by Jia Chen, who borrowed a new loan from East West Bank under only her own name.[18]

- ***March 2023 – BSF's Enforcement Petition is Granted for the Arbitration Award:*** On March 23, 2023, the United States District Court for the Central District of California (the "District Court") granted BSF's Petition for Confirmation, Recognition, and Enforcement of Foreign Arbitration Award (the "Enforcement Petition"), and entered judgment on April 12, 2023 for $21,165,155.97, plus pre-judgment interest (the "Domestic Judgment").[19]

- ***March 2023- Defendant LIN files for Bankruptcy:*** On March, 29, 2023, LIN filed for Chapter 7 Bankruptcy.[20]

---

[16] See LIN's Separate Statement of Uncontroverted Fact Nos. 24, 25, and 26 and supporting evidence, Exhibits 25 and 26.

[17] See LIN's Separate Statement of Uncontroverted Fact No. 27 and supporting evidence, Exhibits 27 and 28.

[18] See LIN's Separate Statement of Uncontroverted Fact No. 28 and supporting evidence, Exhibit 29.

[19] See LIN's Separate Statement of Uncontroverted Fact No. 29 and supporting evidence, Exhibit 31 (Plaintiff's complaint ¶13, pg. 2).

[20] See LIN's Separate Statement of Uncontroverted Fact No. 30.



## II.   LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT AND SUMMARY ADJUDICATION

### A.   Standard to Grant Summary Judgment

Rule 56(a) of the Federal Rules of Civil Procedure (incorporated via reference by Fed. R. Bankr. P. 7056) provides that: "A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.

To prevail on a motion for summary judgment, the moving party must demonstrate the absence of any *genuine* dispute regarding material facts.  A "genuine" dispute exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  See, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   Moreover, such dispute must concern a "material" fact:

> The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct.2505, 91 L.Ed.2d 202 (1986).

> "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248, 106 S.Ct. 2505.

> An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Id*. at 250-51, 106 S.Ct. 2505.

> "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury ... could find by a preponderance of the evidence that the [non-movant] is entitled toa verdict ...." *Id*. at 252, 106 S.Ct. 2505.

A "factual" dispute is one "where the [disputed] inference to be drawn requires 'experience with the mainsprings of human conduct' and 'reference to the data of practical human experience ...'" F. Standards Governing Summary Judgment, Rutter Group Prac. Guide



Fed. Civ. Pro. Before Trial Ch. 14-F (quoting *Nunez v. Superior Oil Co.* 572 F2d 1119, 1126 (5th Cir. 1978)). Even where a material fact is disputed, summary judgment is nevertheless appropriate where (i) a jury has been waived or is otherwise unavailable; (ii) the underlying evidence is undisputed; and (iii) the record is sufficiently developed that a trial would add nothing. *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-24 (5th Cir. 1978). If trial will not enhance a court's ability to draw inferences and conclusions, and evidentiary facts are not disputed, a court may grant summary judgment in a non-jury case. Id. at 1124.

## B.  Burden of Production and Persuasion

As to its causes of action, BSF bears the ultimate burden of persuasion at trial. Consequently:

> A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *See* 10A Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice and Procedure § 2727 (3ded.1998). In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.1990). In order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. See *id*.

As discussed below, the undisputed evidence negates entirely BSF's claims that (i) LIN made representations which he knew were false, that there existed an intent to deceive BSF, that BSF relied on any false representation, and BSF suffered no damage as a result of any false representation; (ii) that the transfers of real property to his wife Jia Chen were actually or constructively fraudulent transfers; (iii) that LIN willfully and maliciously intended to cause injury to plaintiff; and (iv) that Defendant LIN had no intent to hinder, delay, or defraud creditors, no false oaths were made, and there is a satisfactory explanation for the transfers of assets. Therefore, BSF's nondischargeability claim under Section 523(a)(2)(A) must fail. There is likewise no genuine dispute as to any material fact regarding any of the Plaintiff's causes of actions and Defendant LIN is entitled to summary judgment as a matter of law.

15



**III.    LEGAL ARGUMENT**

    **A.  The Debt Which BSF Seeks to Declare Non-Dischargeable Is a Judgment Based on a Dischargeable Contractual Personal Guarantee**

Section 523(a)(2)(A) of the Bankruptcy Code provides an exception from the discharge of any debt for money, property or services, to the extent such debt was obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(A) requires a showing of actual fraud rather than constructive fraud or fraud implied in law. A claim of non-dischargeability under Section 523(a)(2)(A) requires the creditor establish each of the following elements:

    1.  the debtor made a representation;

    2.  the debtor knew at the time the representation was false;

    3.  the debtor made the representation with the intention and purpose of deceiving the creditor;

    4.  the creditor relied on the representation; and

    5.  the creditor sustained damage as the proximate result of the representation.

*In re Apte*, 96 F.3d 1319, 1322 (9th Cir. 1996); *In re Kirsh*, 973 F.2d 1454, 1457 (9th Cir. 1992).

Under Section 523(a)(2)(A), the creditor must show actual intent, not merely intent implied in law, or constructive intent. The requisite intent may, however, be inferred from the totality of the surrounding circumstances. *In re Dakota*, 284 B.R. at 721 (citing *In re Anastas*, 94 F.3d 1280 (9th Cir. 1996)).

A creditor claiming non-dischargeability under Section 523(a)(2)(A) must also show the creditor was justified in relying on the debtor's fraudulent conduct in obtaining the money, property or services. *Field v. Mans*, 516 U.S. 59, 73-76 (1995). Reliance must be justifiable, but need not reach the level of "reasonableness." *In re Dakota*, 284 B.R. at 721.

In addition, under Section 523(a)(2)(A), the creditor must show that the debtor's fraud was a proximate cause of the damage to the creditor. *Field v. Mans*, 516 U.S. at 61, 64 (describing




Section 523(a)(2)(A) as an exception to the discharge of debts "resulting from" or "traceable to" fraud).

Here, the debt which BSF seeks to have declared non-dischargeable is the domestic judgment granted on March 23, 2023 at the conclusion of BSF's enforcement petition (the "Domestic Judgment"). The Domestic Judgment stems from the final arbitration award granted against LIN on September 6, 2019 by the China International Economic and Trade Arbitration Commission ("CIETAC") (the "Final Award"). The Final Award was based on the finding that LIN, Hailian, and Longhe failed to satisfy the payments of Allscore to BSF in accordance with their guarantor obligations under the Termination Agreement and Guarantee Contract. BSF's complaint alleges that "on September 16, 2015, Plaintiff entered into a Guarantee Contract (the "Guarantee Contract") with Lin, Beijing Longhe Trading Co. Ltd. ("Longhe") and Xuyin. And that "under the Guarantee Contract, Lin and Longhe are jointly and severally liable for all obligations borne by Allscore and Hailian under the Termination Agreement."

The debt at issue stems from nothing more than a breach of contract action. Notably, nowhere in BSF's Adversary Complaint are facts alleged that LIN entered into the Guarantee Contract under false pretenses, knowingly made a false representation, or engaged in actual fraud. In fact, in its AC, BSF essentially concedes that point and immediately turns to arguments based on fraudulent transfer.[21]

In fact, there is no genuine dispute of material fact that at the time of entering into the Guarantee Contract, LIN did not knowingly make any false representations, engage in actual fraud, or enter the contract under false pretenses. In entering into the Guarantee Contract, LIN and the other guarantors made no representations which he knew were false, and he had no intent to deceive BSF.

LIN believed at the time that he and the companies were solvent and their holdings valuable enough to guarantee the Termination Agreement. For example, as part of the

---

[21] See LIN's Separate Statement of Uncontroverted Fact Nos. 4 and 5 and supporting evidence, Exhibit 31 (Plaintiff's complaint ¶ 9, pg. 1).

DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION



1  understanding between the parties at the time of entering into the Guarantee Contract, LIN, who

2  controlled Hailian, had agreed to sell Hailian's assets which LIN reasonably believed were

3  valued at $45 million USD if Allscore and Hailian did not perform under the Termination

4  Agreement.[22]

5       Moreover, BSF has not alleged any facts nor could it prove that it justifiably relied on any

6  misrepresentations by LIN as BSF did no due diligence as part of the Guarantee Agreement.

7  Finally, BSF has not alleged any facts nor could it prove that LIN's supposed "fraud" was the

8  proximate cause of the damage to the creditor, as no fraud occurred and there were two other

9  guarantors on the guaranty agreement who were jointly and severally liable to BSF.

10       Accordingly, BSF has failed to meet the required elements to have the Domestic Judgment

11  Debt declared non-dischargeable and no genuine dispute of material fact exists as to whether

12  LIN knowingly made any false representations, engaged in actual fraud, or entered the Guarantee

13  Agreement under false pretenses. Thus, LIN is entitled to summary judgment as a matter of law,

14  or alternatively, summary adjudication on this issue.

15  **B.  Plaintiff's First Cause of Action for Nondischargeability of Debts Under 523(a)(2)(A)**

16  **Based on a Theory of Fraudulent Transfer Fails**

17       The Supreme Court clarified that "actual fraud" for the purposes of 11 U.S.C 523(a)(2)(A)

18  encompasses fraudulent conveyance schemes even when those schemes do not involve a false

19  representation. *Husky Intern. Electronics, Inc. v. Ritz.*

20       In its Adversary Complaint, BSF alleges in its first cause of action that LIN engaged in a

21  scheme of fraudulent transfer.

22           **1.  LIN Had No Actual Intent To Hinder or Delay**

23       For purposes of § 523(a)(2)(A), scienter must be measured by the debtor's subjective intent

24  at the time of the transaction in which the debtor obtained the money, property or services.

25  Subsequent acts of fraud or omission do not establish that the debtor had the requisite intent at

26

27  ───────────────

28  [22] See LIN's Separate Statement of Uncontroverted Fact Nos. 6 and 7 and supporting evidence, Exhibits 7 and 31
(Plaintiff's complaint ¶ 10, pg. 2).



DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY
ADJUDICATION

the time to make any fraudulent representations. *In re Philopulos* (BC ND IL 2004) 313 BR 271, 282. In re Gertsch, the court noted that "summary judgment is appropriate if all reasonable inferences defeat the claims of one side, even when intent is at issue." *In re Gertsch*, 237 B.R. 160 (1999). Similarly, in *Provenz v. Miller*, the Ninth Circuit held that cases where intent is a primary issue are generally inappropriate for summary judgment unless all reasonable inferences that could be drawn from the evidence defeat the plaintiff's claim. *Provenz v. Miller*, 102 F.3d 1478 (1996).

Here, BSF's first cause of action rests on two bases—first that LIN fraudulently transferred the Broad Beach Property and the Latigo Property to his wife, and second that LIN transferred $800,000 from multiple East West Bank Accounts on or about May 26, 2023.

Starting first with the purported fraudulent transfers of the Broad Beach Property and the Latigo Property, on March 18, 2019, the transfers were disclosed to the world as the grant deeds for both properties were recorded reflecting the change in title to Jia Chen as her sole and separate properties.[23] This transfer was made not with the intent to delay, hinder or defraud creditors but was instead made as part of a divorce/separation agreement entered into in January of 2018 after Jia Chen discovered that LIN's extra-marital affair had continued.

LIN received better than equivalent value for the transfers of the subject real properties, as the real properties transferred were worth in total approximately $3.67 million USD only, but LIN's net worth actually increased because he handed off the mortgage liabilities to Jia Chen, received approximately $2.74 million USD from her, and critically, LIN received full ownership of his extremely valuable companies that were once community property.[24]

---

[23] See LIN's Separate Statement of Uncontroverted Fact Nos. 18 and 19 and supporting evidence, Exhibits 16 and 17.

[24] See LIN's Separate Statement of Uncontroverted Fact Nos. 11 and 12 and supporting evidence, Exhibit 10.

1  Furthermore, since the transfers occurred LIN has not maintained legal custody or control

2  of either the Broad Beach Property or the Latigo Property.  Instead, Jia Chen has paid the loans

3  of both properties by herself since January 2018.[25]

4  Subjectively, LIN had no intent to delay, hinder, or defraud when the transfers were made,

5  but the circumstances of these transfers also fail to meet the badges of fraud. At the time that the

6  transfers were made, they did not represent a transfer of all or substantially all LIN's assets

7  because LIN retained ownership of his companies valued at about $120 million USD.[26]

8  The valuation of Allscore at the time of the transfers is not in genuine dispute as the

9  valuation of the company was appraised when it was included in a memorandum of purchase by

10  proposed by a third-party company known as Wirecard. Furthermore, the transfers did not render

11  LIN insolvent, and, as discussed above, LIN received better than equivalent value for the

12  properties.  Additionally, these transfers were made more than four years before BSF even had

13  an enforceable award in the United States, and it was not until March 23, 2023 that the United

14  States District Court for the Central District of California (the "District Court") granted BSF's

15  Petition for Confirmation, Recognition, and Enforcement of Foreign Arbitration Award.

16  Finally, the alleged transfer of $800,000.00 from alleged East West Bank Accounts simply

17  did not occur. To date in this lawsuit BSF has produced no evidence to that effect and no dispute

18  of material fact exists as to whether those transfers occurred.[27]

19  As such, no "genuine" dispute exists regarding whether or not LIN had actual intent, and

20  there is no evidence possessed by BSF such that a reasonable jury could return a verdict for the

21  nonmoving party.

22

23

24

25

---

26  [25] See LIN's Separate Statement of Uncontroverted Fact No. 18.

27  [26] See LIN's Separate Statement of Uncontroverted Fact No. 23 and supporting evidence, Exhibits 23 and 24.

28  [27] See LIN's Separate Statement of Uncontroverted Fact No. 31.

DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY
ADJUDICATION



**C. BSF's Second Cause of Action for Nondischargeability of Debts Under 523(a)(6) Fails to Meet the Willful and Malicious Prongs**

Section 523 also excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity…" 11 U.S.C. § 523(a)(6). A willful and malicious injury under Section 523(a)(6) requires proof of a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). Debts arising from recklessly or negligently inflicted injuries are not within the scope of § 523(a)(6). *See In re Qari* (BCND CA 2006) 357 BR 793, 798. Instead, the type of debts excluded from discharge under§ 523(a)(6)"triggers in the lawyer's mind the category intentional torts, as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend the consequences of an act, not simply the act itself." *Kawaauhau v. Geiger* (1998) 523 US 57, 61-62, 118 S.Ct. 974, 977 (internal quotes and emphasis omitted); *In re Steger* (8th Cir. BAP2012) 472 BR 533, 537.

**1. Willful Intent**

Under Section 523(a)(6), to meet the willful injury requirement, the plaintiff must show either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct. *In re Su*, 290 F.3d 1140, 1143 (9th Cir. 2002).

In *In re Su*, the Ninth Circuit noted that willfulness and malice are two separate requirements that are not to be "conflated" into a single inquiry, and made it clear that each alternative prong of the willfulness showing must be based on a subjective standard. The subjective standard focuses on the debtor's state of mind and precludes application of Section 523(a)(6)'s non-dischargeability provision short of the debtor's actual knowledge that harm to the creditor was substantially certain. *In re Su*, 290 F.3d at 1146.

While bankruptcy law governs whether a claim is non-dischargeable under Section 523(a)(6), the court looks to state law to determine whether an act falls within the underlying tort. *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999); see also *Lockerby v. Sierra*, 535 F.3d 1038,



1041 (9th Cir. 2008) (holding that a breach of contract is not "willful and malicious" under Section 523(a)(6) unless accompanied by conduct that constitutes a tort under state law).

Examples where 523(a)(6) nondischargeability was applicable include situations where a chapter 7 debtor beat his ex-wife with a baseball bat, binding her hands and feet with duct tape, stripping her of her pants and placing her in a trash can in an unheated storage facility with the result that—when rescued more than 18 hours later—she suffered a miscarriage and lost her 10 toes to frostbite and where a different Chapter 7 debtor had set a fire that destroyed her boyfriend's home. S*ee, Jendusa-Nicolai v. Larsen* (7th Cir. 2012) 677 F3d 320, 323-324 and *In re Edie* (BC D UT 2004) 314 BR 6, 17.

The instant action could not be more different from the two cases discussed above.  Here, BSF argues that LIN willfully harmed BSF by making the alleged fraudulent transfers of the Broad Beach Property and the Latigo Property to his wife, and that LIN willfully harmed BSF by transferring $800,000 from multiple East West Bank Accounts.

However, as discussed above, the alleged fraudulent transfers of the Broad Beach Property and the Latigo Property were not in fact fraudulent transfers, and no genuine dispute of material fact exists.  The transfers of both properties were made pursuant to a divorce agreement, and LIN received equivalent value, and therefore, there was no intent to defraud delay or hinder creditors, and LIN did not willfully injure BSF.  Likewise, the alleged transfer of $800,000.00 did not occur, and therefore LIN could not have willfully injured BSF on that basis.

Accordingly, no genuine dispute of material fact exists as to whether Defendant LIN willfully injured BSF.

### 2.  Malicious Injury

A "malicious injury" under Section 523(a)(6) involves:

1.  a wrongful act;

2.  done intentionally;

3.  which necessarily causes injury; and

4.  is done without just cause or excuse.



1   "Maliciousness" may be implied from circumstances surrounding the debtor's conduct. In

2   re Ormsby, 591 F.3d 1207 (9th Cir. 2010).

3       Lastly, in an action for determination of dischargeability under Section 523(a), the

4   plaintiff (creditor) has the burden of proving all elements of the claims for relief asserted by a

5   preponderance of the evidence. *In re Dakota*, 284 B.R. 711, 721 (Bkrtcy. N.D. Cal., 2002) (citing

6   to Grogan v. Garner, 498 U.S. 279 (1991)). The exceptions to discharge set forth in Section

7   523(a) are to be construed narrowly. Id. (citing *In re Risoi*, 978 F.2d 1151 (9th Cir. 1992)).

8       Here, BSF argues that the alleged fraudulent transfers constitute a malicious injury.

9   However, once again, the transfers of the Broad Beach Property and the Latigo Property were

10  made for equivalent value and without the intent to delay, hinder, or defraud creditors.

11      Additionally, the alleged transfer of $800,000 from East West Bank Accounts simply did

12  not occur.  Accordingly, there is no genuine dispute as to the fact that BSF has suffered no

13  malicious injury, and LIN is entitled to summary judgment as a matter of law as to BSF's second

14  cause of action.

15  **D. BSF's Third, Fourth, and Fifth Causes of Action for Nondischargeability of Debts**

16  **Under 727(a)(2), 727(a)(4)(A), and 727(a)(5)**

17          **1.  BSF's Third Cause of Action for Nondischargeability of Debts Under**
            **727(a)(2) Fails Because It Is Based on Transfers Which Did Not Occur**

18      Under 11 U.S.C. Section 727(a)(2), the court shall grant the debtor a discharge,

19  unless…the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate

20  charged with custody of property under this title, has transferred, removed, destroyed, mutilated,

21  or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

22  property of the debtor, within one year before the date of the filing of the petition; or property of

23  the estate, after the date of the filing of the petition. To warrant denial of a discharge, the debtor's

24  intent to hinder, delay or defraud creditors must be actual, rather than constructive. *In re Adeeb*,

25  supra,787 F2d at 1342-1343; *In re Clark* (BC D ID 2015) 525 BR 442, 457.

26      Here, because the transfers of the Broad Beach Property and the Latigo Property occurred

27  more than four years before the bankruptcy petition was filed, BSF's third cause of action under

28  11 U.S.C. Section 727(a)(2) is based only on the alleged transfer of $800,000.00 from the East

West Bank accounts. These alleged transfers simply did not occur, and no evidence has been produced by BSF to that effect.[28]

Accordingly, no genuine dispute of material fact exists as to whether those alleged transfers occurred.  Without the alleged transfer of $800,000.00 from the supposed East West Bank accounts immediately prior to the filing of the bankruptcy petition, BSF alleges no other transfers or facts to support a cause of action for Nondischargeability of Debts under 727(a)(2).

**2.  Plaintiff's Fourth Cause of Action for Nondischargeability of Debts Under 727(a)(4) Fails Because There Is No Genuine Dispute of Material Fact as to the Issue of Whether Made a False Oath or Withheld Info**

Under 11 U.S.C. Section 727(a)(4)(A), the court shall grant the debtor a discharge, unless the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

Here, BSF's fourth cause of action argues that LIN failed to disclose all of his bank accounts including the supposed East West Bank accounts from which he transferred $800,000.00 and that he failed to identify assets which he still beneficially controlled.

However, LIN made no false oaths or accounts and disclosed all assets and accounts which he controls.  As has been extensively discussed above, LIN did not make any transfers from any East West Bank accounts immediately prior to filing his bankruptcy, and BSF has presented no evidence of said transfers.  In addition, the transfers of the Broad Beach Property and the Latigo Property were recorded more than four years prior to the bankruptcy filing, and LIN has maintained no beneficial interest in those properties.

---

[28]  See LIN's Separate Statement of Uncontroverted Fact No. 31.

1    Accordingly, no genuine dispute of material fact exists as to whether LIN knowingly and

2    fraudulently made a false oath or account by failing to disclose accounts or assets in which he

3    maintained a beneficial interest.  Therefore, LIN is entitled to judgment as a matter of law on the

4    Plaintiff's fourth cause of action.

5        **3.    BSF's Fifth Cause of Action for Nondischargeability of Debts Under**

6        **727(a)(4) Fails Because No Genuine Dispute of Material Fact Exists As To**

7        **Defendant Lin's Satisfactory Explanation for All Transfers Relating to the**
         **Estate**

8    Under 11 U.S.C. Section 727(a)(5), the court shall grant the debtor a discharge, unless the

9    debtor has failed to explain satisfactorily, before determination of denial of discharge under this

10   paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

11   Here, BSF's fifth cause of action rests on a similar basis as its other causes of action, the

12   alleged failure to explain satisfactorily a material loss of assets or deficiency of assets to meet

13   LIN's liability, including the alleged transfers of a substantial majority of LIN's assets during or

14   soon after the final award by CIETAC or the dissipation of amounts held in East West Bank

15   accounts immediately prior to or after the petition date.

16   However, LIN has repeatedly given a satisfactory explanation for the transfer of the Broad

17   Beach Property and the Latigo Property.  The transfers were made for equal consideration and

18   did not represent a majority of LIN's assets, which consisted primarily of LIN's company stock

19   valued at that time at about $120 million USD.  Likewise, the supposed transfer of $800,000.00

20   from the alleged East West Bank accounts simply did not occur, and BSF has produced no

21   evidence to that effect.

22   Thus, no genuine dispute of material facts exists as to whether LIN has failed to

23   satisfactorily explain and supposed loss of assets or deficiency of assets to meet his liabilities.

24

25

26   //

27   //

28   //




DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY
ADJUDICATION

## V.    CONCLUSION

For all of the above reasons, there are no triable issues as to any material fact, and LIN is therefore entitled, as a matter of law, to summary judgment on BSF's Adversary Complaint or, alternatively, summary adjudication on the issues presented herein.


Dated: May 15, 2025                                                LO & LO LLP


                                                          By: _____
                                                              Kelvin J. Lo
                                                              Jonathan J. Lo
                                                              Brendan T. Molloy
                                                              Attorneys for Defendant
                                                              YAO LIN

DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 506 North Garfield Avenue, Suite 280, Alhambra, CA 91801

A true and correct copy of the foregoing document entitled (*specify*): **DEFENDANT YAO LIN'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF); DEFENDANT YAO LIN'S SEPARATE STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION; [PROPOSED] ORDER GRANTING YAO LIN'S MOTION FOR SUMMARY JUDGMENT; YAO LIN'S INDEX OF EXHIBITS; DECLARATION OF JIA CHEN; DECLARATION OF YAO LIN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **05/15/2025**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Amy L Goldman (TR)
marisol.jaramillo@lewisbrisbois.com, AGoldman@iq7technology.com;ecf.alert+Goldman@titlexi.com

Clifford P Jung on behalf of Creditor Industrial and Commercial Bank of China (USA) NA
curtis@jyllp.com, ry@jyllp.com;jessica@jyllp.com

Peter J Mastan on behalf of Trustee Amy L Goldman (TR)
peter.mastan@dinsmore.com, SDCMLFiles@dinsmore.com;Katrice.ortiz@dinsmore.com

Leodis Clyde Matthews on behalf of Plaintiff Beijing Soufun Science and Technology Development Co., Ltd.
leodismatthews@zhonglun.com

Brian M Metcalf on behalf of Trustee Amy L Goldman (TR)
brian.metcalf@dinsmore.com, brian-metcalf-9774@ecf.pacerpro.com;katrice.ortiz@dinsmore.com

Jonathan Serrano on behalf of Trustee Amy L Goldman (TR)
Jonathan@MarguliesFaithLaw.com, vicky@marguliesfaithlaw.com;angela@marguliesfaithlaw.com;amber@marguliesfaithlaw.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) **05/15/2025**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
(state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **05/15/2025**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or



email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>PRESIDING JUDGE</u>
Honorable Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/19/2025 | Kelvin J. Lo | /s/ Kelvin J. Lo |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

DEFENDANT YAO LIN'S MOTION FOR SUMMARY JUDGMENT OR, ALTERNATIVELY, SUMMARY ADJUDICATION



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT YAO LIN'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF

